IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AUGUSTUS SIMMONS, | ) | |
|     Plaintiff | ) | Civil Action No. 13-258 Erie |
| | ) | |
| v. | ) | |
| | ) | District Judge Bissoon |
| CAPTAIN SZELEWSKI, et al., | ) | Magistrate Judge Baxter |
|     Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.   RECOMMENDATION**

It is respectfully recommended that Defendants' motion to dismiss second amended complaint [ECF No. 25] be granted in part and denied in part.

**II.   REPORT**

**A.   Relevant Procedural History**

On August 23, 2013, Plaintiff Augustus Simmons, an inmate formerly incarcerated at the State Correctional Institution at Albion, Pennsylvania ("SCI-Albion"),[1] filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. Plaintiff subsequently filed an amended complaint [ECF No. 14] on December 16, 2013, and a second amended complaint on January 31, 2014 [ECF No. 25-1], the latter of which is the operative pleading in this case.[2] Named as Defendants are three corrections officers at SCI-Albion: Captain Szelewski ("Szelewski"), C/O Williamson

---

[1] Plaintiff is currently incarcerated at the State Correctional Institution at Greene in Waynesburg, Pennsylvania.

[2] The docket indicates that Plaintiff's second amended complaint is at ECF No. 24; however, the document docketed at ECF No. 24 is actually a compilation of exhibits that were intended to be attached to the second amended complaint. Noticing the absence of the second amended complaint on the docket, Defendants have attached a copy of the second amended complaint as exhibit 1 to its motion to dismiss [ECF No. 25-1].

("Williamson"), and C/O Silloway ("Silloway").

Plaintiff alleges that Defendants violated his rights under the first, fourth, and fourteenth amendments to the United States Constitution when they confiscated his legal property during an investigative cell search and subsequently destroyed it. Plaintiff alleges further that Defendant Szelewski retaliated against him for exercising his constitutional right to file grievances and lawsuits.

Defendants have filed a motion to dismiss second amended complaint [ECF No. 25] arguing that Plaintiff has failed to state a claim upon which relief may be granted. Plaintiff has since filed a response in opposition to Defendants' motion [ECF No. 30]. This matter is now ripe for consideration.

### B. Relevant Factual History

Plaintiff alleges that on or about January 15, 2013, while he was absent from his cell, Defendants Silloway and Williamson conducted an investigative cell search in the presence of his cellmate (ECF No. 25-1, Second Amended Complaint, at ¶ 7). During the search, Defendant Williamson allegedly noticed a civil complaint Plaintiff had drafted against two corrections officers unrelated to the instant case, C/O Godshall ("Godshall") and C/O Handwerk ("Handwerk") (Id. at ¶ 8). The complaint included over ten witness affidavits accusing Handwerk of organizing an assault on Plaintiff and enlisting the assistance of rival gang members by giving them a cellphone (Id. at ¶¶ 9-10). According to Plaintiff, because Defendant Williamson is a close friend of Handwerk, he became "frustrated" and told Defendant Silloway to look for anything with the names of Handwerk or Godshall on them (Id. at ¶ 11-12).

Defendant Silloway then discovered a PCRA petition that Plaintiff had prepared, which included an affidavit discussing gang-related issues involving Plaintiff, Handwerk, and Godshall,

"and a murder" (Id. at ¶¶ 13-14). According to Plaintiff, Defendant Silloway quickly gave Defendant Williamson the PCRA petition, which was over 25 pages long (Id. at ¶¶ 15-16). Defendants Silloway and Williamson then informed Defendant Szelewski of their discovery and Szelewski allegedly approved the confiscation of Plaintiff's legal materials (Id. at ¶¶ 19-20). The alleged pretext for taking Plaintiff's legal material, which allegedly comprised two excess boxes or approximately 12,500 pages, was that it was gang-related (Id. at ¶¶ 19-29, 54). As a result, Plaintiff was issued a misconduct for possessing contraband (Id. at ¶ 30).

Plaintiff subsequently filed "several grievances and request slips" requesting the return of his legal material before the expiration of his legal filing deadlines (Id. at ¶ 31). Plaintiff also talked to Defendant Szelewski, explaining that he had filing deadlines to meet and that he only required the return of the legal material to meet those deadlines (Id. at ¶¶ 33, 35). Szelewski responded that he had received only about 91 pages of Plaintiff's legal material, with some of the pages having gang-related information on them, and that there was never two boxes of legal material or any civil rights complaint or PCRA petition among the documents he received (Id. at ¶¶ 34, 36). Plaintiff then demanded the return of his legal materials by threatening to file a civil suit, in response to which Defendant Szelewski allegedly threatened to give Plaintiff more time in the RHU if he proceeds with his request for the return of his legal material (Id. at ¶¶ 37-38). When Plaintiff replied that he did not care about receiving more RHU time, Defendant Szelewski allegedly responded that he hated inmates who filed suits against "good officers" and "for that I'm sending you to the gang unit" (Id. at ¶¶ 39-41).

While Plaintiff was in the RHU, an unidentified corrections officer allegedly informed Plaintiff that he was ordered to destroy two boxes of legal material with Plaintiff's name on them (Id. at ¶ 42). Plaintiff filed a grievance asking that his property be returned and not destroyed and

that he be transferred with all of his legal material (Id. at ¶ 44). Plaintiff was subsequently transferred to SCI-Smithfield, where he was placed in the RHU; however, his legal material was not returned to him (Id. at ¶ 45-46). Plaintiff alleges that he "has now been time barred on his PCRA's do [sic] to the Defendants' actions by not returning all of [his] legal paper, also [he] has lose [sic] a very good law suit that would have been very victorious do [sic] to all of the evidence collected by Plaintiff" having been taken from him (Id. at ¶ 47). On January 8, 2014, Plaintiff received a letter stating that his PCRA petition was dismissed (Id. at ¶ 48).

### C. Standards of Review

#### 1. Motion to Dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550

U.S. at 555. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 19, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556.

The Third Circuit Court has prescribed the following three-step approach to determine the sufficiency of a complaint under Twombly and Iqbal:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011), citing Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 129 S.Ct. at 1947, 1950); see also Great Western Mining & Min. Co. v. Rothschild LLP, 615 F.3d 159, 177 (3d Cir. 2010).

### 2. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it

should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. See Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969)("petition prepared by a prisoner... may be inartfully drawn and should be read 'with a measure of tolerance'"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997)(overruled on other grounds). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### D. Discussion

#### 1. Fourth Amendment Claim

Plaintiff claims that the confiscation of, and failure to return his legal property violated his Fourth Amendment right to be free from illegal search and seizure. Defendants correctly note, however, that the United States Supreme Court has held that the Fourth Amendment does not apply to searches of prison cells or seizures of property within them. Hudson v. Palmer, 468 U.S. 517, 536 (1984). Thus, Plaintiff is unable to maintain a claim based upon the Fourth Amendment, and the same should be dismissed accordingly.

#### 2. Fourteenth Amendment Due Process Claim

Plaintiff also claims that Defendants' confiscation of, and failure to return his legal property violated his Fourteenth Amendment right to procedural due process rights. Defendants argue that Plaintiff's Fourteenth Amendment due process claim must fail because the availability

of a prison grievance procedure satisfies all the requirements of due process. The Court agrees.

The Due Process Clause was promulgated to secure individuals from the arbitrary exercise of the powers of government. The procedural aspect of the Due Process Clause guarantees the availability of certain procedural mechanisms, typically the right to notice and a hearing, before the government can deprive an individual of a liberty or property interest. In the context of depriving an inmate of his property, however,

> ... the Supreme Court has held that meaningful post-deprivation remedies provide sufficient due process for negligent deprivations of property, Parratt v. Taylor, 451 U.S. 527, 530 (1981), and intentional deprivations of property, Hudson v. Palmer, 468 U.S. 517, 533 (1984), and that requiring a pre-deprivation hearing would be absurd since it would be impossible to determine when a negligent or intentional deprivation of property would occur. Zinermon v. Burch, 494 U.S. 113, 117 (1990). **The Court of Appeals has held that the DOC's grievance procedure provides an adequate post-deprivation remedy**, see e.g. Tillman v. Lebanon County Corr. Fac., 121 F.3d 410, 422 (3d Cir. 2000), **and that the existence of this post-deprivation remedy forecloses any due process claim**, Austin v. Lehman, 893 F.Supp. 448, 454 (E.D.Pa. 1995) even if an inmate is dissatisfied with the result of the process. Iseley v. Horn, 1996 WL 510090, at * 6 (E.D.Pa. Sept. 3, 1996). As [the inmate plaintiff] admits to having used the grievance procedure to attempt the return of his [property], he had access to an adequate post-deprivation remedy and even if there had been a violation of his liberty interest he was not denied the right to due process of law.

Pettaway v. SCI Albion, 2012 WL 366782 at *3-4 (W.D.Pa. Feb. 2, 2012), appeal dismissed, 487 Fed. Appx. 766 (3d Cir. 2012), citing Brooks v. DiGuglielmo, 2008 WL 5187529 at * 6 (E.D.Pa. Dec. 9, 2008) (emphasis added). See also Monroe v. Beard, 536 F.3d 198, 210 (3d Cir. 2008) ("[b]ecause prisons are constitutionally required to afford inmates only a post-deprivation remedy, we agree that the defendants' failure to give the inmates prior notice of their intended seizure of their materials did not violate the plaintiffs' Due Process rights"); Banks v. Beard, 2006 WL 2192015 at * 15 (W.D.Pa. Aug. 1, 2006)(regarding inmate plaintiff's claim that he was permanently dispossessed of his property, "[t]he Commonwealth of Pennsylvania provides an adequate post deprivation remedy in the forms of the DOC grievance system and/or a state law tort law suit against the Defendants... [which] satisfy the Fourteenth Amendment's procedural due process guarantee") (citations omitted).

Here, as in Pettaway, Plaintiff admits that he utilized the DOC's grievance process to attempt to obtain the return of the property he claims was improperly taken from his cell and never returned to him. He was provided access to an adequate post-deprivation remedy that has been held to satisfy his procedural due process rights, despite the fact that he is dissatisfied with the outcome. Accordingly, Plaintiff's due process claim is without merit and should be dismissed.

### 3. Access to Courts Claim

Plaintiff next claims that Defendants' confiscation and subsequent destruction of his legal property violated his right to access the courts[3] with regard to two separate legal matters: a pending PCRA petition and a planned civil rights action. Defendants have moved to dismiss this claim, arguing that Plaintiff has failed to "allege any actual injury or any nonfrivolous or arguable claim that was lost or rejected" (ECF No. 26, Defendants' Brief, at p. 7). The Court agrees.

Prisoners have a constitutional right to "adequate, effective and meaningful" access to the courts. Bounds v. Smith, 430 U.S. 817 (1977).[4] Importantly, a plaintiff must demonstrate actual

---

[3] The right of access to courts may arise in the context of the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection Clause. See Christopher v. Harbury, 536 U.S. 403, 415 n.12 (2002).

[4] The Supreme Court has identified two general categories of denial of access to courts claims. Christopher, 536 U.S. at 412-13; see also Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety – Div. of State Police, 411 F.3d 427, 441 (3d Cir. 2005) overruled in part on other grounds as noted in Dique v. N.J. State Police, 603 F.3d 181 (3d Cir. 2010). The first type is "forward-looking" claims which allege that official action frustrates a plaintiff in preparing and filing suit at the present time. Christopher, 536 U.S. at 413. The second category covers "backward – looking" claims which allege that official acts "have caused the loss or inadequate settlement of a meritorious case, the loss of an opportunity to sue, or the loss of an opportunity to seek some particular order of relief …. These cases do not look forward to a class of further litigation, but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable. The ultimate object of these sorts of access claims, then, is not the judgment in a further lawsuit, but simply the judgment in the access claim itself, in providing relief obtainable in no other suit in the future." Christopher, 536 U.S. at 413-14 (citations omitted).

injury stemming from the denial of access.[5] Lewis v. Casey, 518 U.S. 343 (1996). The actual injury requirement "derives from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." Id. at 349. See also Stokes v. Gehr, 399 Fed.Appx. 697, 699 (3d Cir. 2010) (the actual injury requirement articulated in Lewis is "derived from principles of standing, … an unwaivable constitutional prerequisite.").

A plaintiff must allege both an underlying cause of action, whether anticipated or lost, and official acts frustrating the litigation. Christopher v. Harbury, 536 U.S. 403 (2002). In order to state an access to courts claim, "[w]here prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury' – that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." Monroe v. Beard, 536 F.3d 198, 205-06 (3d Cir. 2008) quoting Christopher, 536 U.S. at 415. "To that end, prisoners must satisfy certain pleading requirements: The complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" Id.

Furthermore, a plaintiff must demonstrate intent on the part of the defendants. The Third Circuit has explained:

> A denial of access claim is available where the state officials "*wrongfully and intentionally* conceal information crucial to a person's ability to obtain redress through the courts, and so *for the purpose of frustrating that right*, and that concealment, and the delay engendered by it substantially reduce the likelihood of one's obtaining the relief to which one is otherwise entitled.

Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety – Div. of State Police, 411 F.3d

---

[5] Prisoners are limited to proceeding on access to courts claims challenging either their sentence (by direct or collateral attack) and their conditions of confinement, as the "impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Lewis, 518 U.S. at 355.

427, 445 (3d Cir. 2005). See also Burkett v. Newman, 2012 WL 1038914, at *3 (W.D. Pa. Fed. 21, 2012).

So then, in order to support his access to courts claims, Plaintiff is required to demonstrate that he has lost the opportunity to pursue a nonfrivolous or arguable underlying legal claim, that there is no other remedy available to him, and that Defendants had the requisite intent to deny his constitutional right of access to courts. Here, Plaintiff alleges that the loss/destruction of his legal property resulted in the dismissal of his pending PCRA petition and the loss of his ability to file a viable civil rights complaint against Handwerk and Godshall. As to the former, Defendants argue that Plaintiff did not lose the opportunity to raise an arguable PCRA claim because Plaintiff's court-appointed public defender had already concluded that the petition had no merit, as noted by the state court in its Notice of Intent to dismiss Plaintiff's PCRA petition, dated January 8, 2014 (ECF No. 25-1, Plaintiff's Second Amended Complaint, at p. 22). Moreover, Defendants argue that Plaintiff was not denied access to the courts on his PCRA claim, in any event, because the state court's Notice of Intent gave Plaintiff until January 28, 2014 - five months after the filing of the instant lawsuit - to file a response to the dismissal. Thus, the Court agrees that Plaintiff has failed to state a cognizable access to courts claim with regard to the dismissal of his PCRA petition.

As to the planned civil rights complaint against Handwerk and Godshall, Plaintiff fails to allege how the confiscation of his legal materials prevented him from filing a complaint in a timely manner. Although the complaint Plaintiff had already drafted may have been lost or destroyed, along with the ten supporting affidavits, there was nothing preventing him from redrafting and filing the complaint subsequently. There also is no allegation that he is, or was, time-barred from doing so. Moreover, there is no indication that the lawsuit would have

presented a nonfrivolous or arguably actionable claim, other than Plaintiff's own bald assertion that it was a "very good lawsuit that would have been very victorious." In short, Plaintiff has failed to demonstrate that he has lost the opportunity to pursue a nonfrivolous or arguable underlying legal claim as a result of Defendants' confiscation and destruction of his legal property.

For the foregoing reasons, therefore, Plaintiff's access to courts claim should be dismissed for failure to state a claim upon which relief may be granted.

### 4. Conspiracy Claim

Plaintiff alleges that Defendants conspired with one another to confiscate and destroy his legal property without due process of law and with the intent to prevent him from accessing the courts. However, it is clear from Plaintiff's allegations that such claim is based upon his own suspicion and speculation, rather than fact. As a result, Plaintiff's conspiracy claim fails to state a claim upon which relief may be granted and should be dismissed. See Young v. Kann, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991); Wardell v. City of Erie, 2014 WL 3697945, at *2 n.8 (W.D.Pa. July 24, 2014) ("allegations of conspiracy must be grounded firmly in facts; they cannot be conclusory nor can they hinge on bare suspicions and foundationless speculation").

### 5. Retaliation

Lastly, Plaintiff claims that Defendant Szelewski retaliated against him for exercising his constitutional rights by threatening Plaintiff with more time in the RHU and/or a transfer to the "gang unit" if Plaintiff continued to pursue the recovery of his legal materials. Defendants seek dismissal of this claim, arguing that Plaintiff has failed to allege that any adverse action was actually taken against him.

It is axiomatic that, to state a *prima facie* case of retaliation, Plaintiff must show, *inter*

*alia*, that he suffered an adverse action in response to the exercise of his constitutional rights, and that such action must be sufficient to deter a person of ordinary firmness from exercising those rights. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001); Allah v. Siverling, 229 F.3d 220, 225 (3d Cir. 2000). Defendants argue that Plaintiff has failed to meet this threshold because he alleges only that Defendant Szelewski threatened to take action against him, without any indication that such action was actually carried out. In his response in opposition, however, Plaintiff affirms that he was, in fact, transferred to SCI-Albion's "gang unit" on February 20, 2014, after being threatened by Defendant Szelewski (ECF No. 30, Plaintiff's Response in Opposition, at p. 10). The Court finds that such an action, if true, would be sufficient to deter a person of ordinary firmness from exercising his constitutional rights. Because Plaintiff is proceeding *pro se*, the Court is inclined to accept Plaintiff's opposition response as an extension of his second amended complaint such that he has sufficiently demonstrated an adverse action for purposes of establishing a *prima facie* case of retaliation. Since Defendants have not moved to dismiss Plaintiff's retaliation claim on any other basis, such claim should be allowed to proceed beyond the pleading stage.

### III.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' motion to dismiss [ECF No. 25] be granted in part and denied in part, as follows:

1. Defendants' motion to dismiss Plaintiff's retaliation claim against Defendant Szelewski should be DENIED and such claim should be allowed to proceed beyond the pleading stage; and

2. Defendants' motion to dismiss all other claims should be GRANTED and Defendants Williamson and Silloway should be terminated from this case.

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed.R.Civ.P.

72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written objections to this report and recommendation.  Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto.  Failure to file objections will waive the right to appeal.  Brightwell v. Lehman, 637 F. 3d 187, 193 n. 7 (3d Cir. 2011).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Date:   August 20, 2014

Cc:   The Honorable Cathy Bissoon
      United States District Judge